## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michele D. Moon, | : | Civil No. 1:15-CV-00362 |
| | : | |
| Plaintiff, | : | (Judge Kane) |
| | : | (Magistrate Judge Carlson) |
| v. | : | |
| | : | |
| Carolyn W. Colvin, | : | |
| | : | |
| Defendant. | **:** | |

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

The role of this court in social security appeals is important, but deferential. On appeal we must decide whether there was substantial evidence supporting the decision of the Administrative Law Judge, and whether the opinion of the ALJ adequately addressed that evidence.  In this case we are presented with a claimant, Michele Moon, who subjectively describes a cascading array of severe impairments that she alleges are disabling, but whose claims draw scant support from the medical record.

Plaintiff Michele D. Moon ("Moon"), an adult individual who resides in the Middle District of Pennsylvania, seeks judicial review of the final decision of Carolyn W. Colvin, the Commissioner of Social Security, ("Commissioner") denying her application for benefits under Title XVI of the Social Security Act.  Jurisdiction is

conferred upon this Court pursuant to 42 U.S.C. §1383(c)(incorporating 42 U.S.C. §405(g) by reference).

This matter has been referred to the undersigned United States Magistrate Judge to prepare a report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons expressed herein, we have found that the final decision of the Commissioner of Social Security is supported by substantial evidence. Accordingly, it is recommended that the final decision of the Commissioner denying Moon's claims for benefits be **AFFIRMED**, and that Moon's request for a new hearing or the award of benefits be **DENIED**.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Moon protectively filed an application for supplemental security income under Title XVI of the Social Security Act on February 29, 2012. In her application, Moon alleged that she became disabled on October 27, 2011, the day after her prior concurrent Title II and Title XVI applications were denied at the administrative law judge hearing level. In 2005, Moon was diagnosed with Guillain-Barré syndrome and Bell's palsy after receiving a flu shot. Moon alleges that the residual symptoms of these impairments, as well as Diabetes, restless leg syndrome, migraines, anxiety, and panic attacks, preclude her from engaging in any work that exists in the national

economy.

## A.    MOON'S REPORTED AILMENTS AND THE MEDICAL RECORD

During a consultative examination Moon reported a vast array of physical and mental health problems some of which she alleged spanned decades.  She reported that she has experienced ringing in her ears and depression since childhood.  (Admin Tr. 415); see (Admin Tr. 193)(noting past medical history of hearing loss, not elsewhere characterized).  She asserted that both of these conditions became more severe in 2005. Id. Moon alleged that she was diagnosed with bilateral carpal tunnel syndrome in 2002. (Admin Tr. 415); see (Admin Tr. 193)(noting past medical history of bilateral carpal tunnel syndrome, date of onset not specified); (Admin Tr. 393-94)(EMG noting possible carpal tunnel syndrome). She reported that, in 2003, she began to experience intense anxiety after she was physically abused by her former paramour.  (Admin Tr. 416); see (Admin Tr. 193)(noting past medical history of "anxiety state" not elsewhere characterized, date of onset  not specified).  Moon explained that  she was diagnosed with restless leg syndrome and had surgery on her right knee to correct damage resulting from a prior injury in 2004.  (Admin Tr. 415); see (Admin Tr. 193)(noting diagnoses of restless leg syndrome and derangement of meniscus not elsewhere characterized, date of onset not specified); (Admin Tr. 194)(noting knee arthroscopy in past surgical history, date of procedure not specified).  The same year, according

3

to Moon she began to experience migraine headaches that felt like her "head is being cracked like an egg." (Admin Tr. 415); <u>see</u> (Admin Tr. 193)(noting past medical history of migraine, NOS, onset date not specified). Moon further stated that she was diagnosed with Type II Diabetes and developed Bell's palsy and Guillain-Barré syndrome in 2005. (Admin Tr. 415); <u>see</u> (Admin Tr. 193)(noting past medical history of Bell's palsy, Guillain-Barré, and Type II Diabetes, date of onset not specified). The Bell's palsy and Guillain-Barré syndrome have since resolved, but Moon asserted that she continued to suffer from some residual symptoms. (Admin Tr. 415). Also in 2005, Moon stated that she had surgery on her right foot to correct Plantar Fasciitis. (Admin Tr. 194); <u>see</u> (Admin Tr. 194)(noting past surgical history of endoscopic plantar fasciitis procedure, date not specified). In 2007 Moon claimed that she had a breast reduction surgery. (Admin Tr. 415); <u>see</u> (Admin Tr. 194)(noting bilateral reduction of breast on December 28, 2007). In 2008 Moon reported that she had her appendix removed and underwent tubal ligation and endometrial ablation. (Admin Tr. 415); <u>see</u> (Admin Tr. 194)(noting appendectomy, tubal ligation, and endometrial ablation in 2008). Moon indicated that she was diagnosed with fibromyalgia in 2012. (Admin Tr. 415); <u>see</u> (Admin Tr. 374)(recommending follow-up with primary doctor for management of fibromyalgia in January 2012). Moon also reported that she has five protruding discs in her neck, two protruding discs in her lower back, "mild"

scoliosis, arthritis in both knees, and joint space narrowing in both knees, all of which cause her pain upon exertion or when she remains in one position for an extended period of time. (Admin Tr. 415); see (Admin Tr. 395)(2012 MRI of cervical spine revealing the impression of stable findings of small posterior disc protrusions at multiple levels of the cervical spine without significant central canal or neural foraminal narrowing); (Admin Tr. 193)(noting past medical history of Herniated Nucleus Pulposus L4-L5 Left).

Moon's claims were initially denied by the Social Security Administration on June 1, 2012. Upon receipt of this denial, Moon requested a hearing before an Administrative Law Judge. Her request was granted, and on June 24, 2013, Moon appeared and testified at an administrative hearing before Administrative Law Judge Gerald W. Langan ("the ALJ") held in Scranton, Pennsylvania. Moon was represented by an attorney. Impartial vocational expert Josephine Doherty ("VE Doherty") also appeared and testified.

At this hearing, Moon reported that she experiences severe chronic fatigue, altered vision (far sighted in left eye, and near sighted in right eye), confusion, and short-term memory problems as residual symptoms of Guillain-Barré syndrome. (Admin Tr. 56, 415). She also stated that her anxiety manifests in situations where she feels like she cannot complete a task as a result of her physical limitations, and

that she feels depressed because she cannot do things that she used to be able to do. (Admin Tr. 57).  Moon testified that she gets migraine headaches between two and three times per month, lasting between eight and forty-eight hours in duration. (Admin Tr. 58, 415).  Her migraines are triggered by loud noise, repetitive noise, bright light, foul odors, and high heat with humidity.  (Admin Tr. 63).

Physically, Moon reported difficulties sitting for long periods.  (Admin Tr. 60). She testified that she could sit in a soft chair for approximately two hours, but could sit for only one hour in other chairs.  Id.  Moon stated that she could stand for approximately ten minutes before he knees buckle and her back begins to ache.  Id. According to Moon, she could walk for approximately ten minutes at one time, without using an assistive device, before experiencing extreme fatigue.  (Admin Tr. 60-61).  Moon testified that she could lift between eight and nine pounds, but could not lift that weight for ten or more times per hour.  (Admin Tr. 61).  Moon also testified that she avoids articles of clothing that use buttons, zippers, and has difficulty tying shoelaces, due to her carpal tunnel syndrome.  Id.

Moon takes the following medications: Propranolol; Tramadol; Promethazine; Glimepiride;  Carbidopa-Levodopa;  Pioglitazone;  Ondansetron;  Fluconazole; Pantoprazole; Naproxen; Spironolactone; vitamin D; and omega 3.  Id.  She reported that she experiences the side-effects of dizziness, drowsiness, and nausea.  (Admin Tr.

62).

In terms of her daily activities, Moon is the mother of a school-aged child.  She testified that she wakes her daughter for cyber school each morning.  (Admin Tr. 58).  While her daughter attends her morning classes, Moon goes back to bed.  <u>Id.</u>  Moon gets up again at mid-day, then spends up to three hours helping her daughter with school work.  <u>Id.</u>  She and her daughter share some household chores, but Moon cooks dinner and cleans the house in "little bits and pieces throughout the day." (Admin Tr. 59).  Moon testified that she is physically able to drive, but relies on others for transportation because she does not have access to a vehicle.  <u>Id.</u>  Moon testified that she watches approximately three hours of television per day in forty-five minute increments, and uses a computer one hour per day.  (Admin Tr. 59, 63).  Moon also reads books.  Neither Moon nor her daughter participate in any social activities outside the home, but Moon does go to the grocery store for food.  (Admin Tr. 62).  She does all other shopping online.  Moon reported that she does not like to be around people who do not understand her limitations and becomes very anxious around crowds.  (Admin Tr. 65).

In an adult function report dated April 15, 2012, Moon reported that, due to her impairments, she could: lift or carry no more than nine pounds; stand for up to ten minutes at one time; walk up to fifteen minutes at one time; and sit up to thirty

minutes at one time.  (Admin Tr. 170-78).  She also reported that she could not rise upon kneeling, bending, or squatting, had a decreased range of motion that impaired her ability to reach with her arms, had difficulty climbing stairs, and had difficulty seeing and talking because of excessive eye watering and drool due to Bell's palsy. Id.  Moon also reported that her anxiety and pain adversely affected her ability to concentrate, and her social anxiety interfered with her ability to be around people. She stated that her conditions are "invisible" which result in her being treated poorly or unfairly by those who perceive her as unimpaired.  Id.

The difficulty with many of these claims is that they were either contradicted by, or drew only sparse support from, the medical record.  Thus, despite Moon's treatment by many health care providers over the years, there was not any treating source opinion evidence describing her condition as disabling.  In contrast, several consultive and non-examining medical sources opined that Moon's ailments were not wholly disabling.  Further, in some instances, Moon's claims were inconsistent with her treatment records, or her actual conduct. For example, Moon described intractable, severe and untreatable headaches, but her medical records indicated that she reported that these headaches responded well to medication.  Likewise, Moon's doctors prescribed a walker for her use, but Moon stated that she found the walker awkward and inconvenient and therefore did not use it.

8

A.      **The ALJ's Decision Denying Ms. Moon's Claim**

The ALJ denied Moon's claim in a written decision dated July 22, 2013.  In his July 22, 2013 decision denying Moon's claims the ALJ proceeded through each step of the five-step sequential evaluation process.  At step one the ALJ found that Moon had not engaged in any substantial gainful activity since February 29, 2012, her protective filing date.  (Admin Tr. 15).  At step two the ALJ found that Moon had the following medically determinable severe impairments: fibromyalgia, obesity, right-side carpal tunnel syndrome, depression, and anxiety.  Id.  The ALJ also found that Moon had the following medically determinable non-severe impairments: diabetes mellitus, restless leg syndrome, and migraine headaches.[1] (Admin Tr. 15-16).  At step three the ALJ found that Moon did not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the listing of impairments").  (Admin Tr. 16-17).

Between steps three and four, the ALJ assessed Moon's RFC based on the

---

[1] The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities," such as: the physical functions of walking, standing, sitting , lifting pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing or speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and, dealing with changes in a routine work setting.  20 C.F.R. §416.921.

evidence of record.  He found that, between February 29, 2012, and July 22, 2013,

Moon had the RFC to perform light work as defined in 20 C.F.R. §416.967(b) except

that:

> the claimant has been limited to work that involves simple routine tasks
> with short instructions, simple work related decisions, and few work
> place changes.  She should have no more than occasional interaction
> with co-workers and supervisors.  Claimant would be capable of no more
> than the occasional use of the right upper extremity for fine
> manipulation, but no limitation with regard to gross handling.  Claimant
> should engage in no climbing of ladders, ropes, of[sic] scaffolds, but
> may occasionally climb ramps and stairs.  She should avoid concentrated
> exposure to temperature extremes, humidity, wetness, vibration, noise
> above level 3 noise intensity levels, and hazards such as moving
> machinery and unprotected heights.

(Admin Tr. 17-18).

In making this determination, the ALJ assessed the credibility of Moon's

subjective testimony in accordance with 20 C.F.R. §416.929 and Social Security

Rulings "SSRs" 96-4p and 96-7p.  After considering Moon's statements about the

intensity, persistence, and limiting effects of her symptoms during her administrative

hearing and in her adult function report, and comparing them to the other credible

evidence of record, the ALJ found that  Moon's statements were not entirely credible

based on her relatively conservative treatment history, the unremarkable examination

findings by her treating sources, and her self-reported activities of daily living.

The ALJ also considered the medical opinions submitted by nontreating

psychologist Victoria Stewart ("Dr. Stewart"), nonexamining medical consultant Mark Bohn ("Dr. Bohn"), and nonexamining psychologist Grant W. Croyle ("Dr. Croyle").

On May 25, 2012, Dr. Stewart examined Moon.   The record includes her examination report and medical source statement.   In her narrative report, Dr. Stewart noted that Moon repositioned herself several times on the couch during the examination, explained that she was experiencing lower back pain, and appeared to have difficulty rising from a seated position.   (Admin Tr. 414-17).   On mental status examination, Dr. Stewart observed that although Moon's affect was appropriate and stable throughout the encounter, she presented as dysphoric and tearful.  Id.   Moon denied any auditory, visual or tactile hallucinations.  Id.   Her responses to questions were goal-directed.   Her rate and tone of speech were appropriate.  Id.   Moon's judgment, general knowledge, concentration, and long-term memory appeared to be intact.  Id.   Moon's short-term recall appeared "somewhat impaired" based on the fact that Moon was able to recall only one of three words at a five-minute interval.  Id.   Dr. Stewart noted that Moon endorsed symptoms consistent with a diagnoses of major depressive disorder and generalized anxiety disorder during the clinical interview.  Id.   During this examination, Moon reported symptoms of: feeling down or sad, difficulty falling asleep, decreased energy, decreased motivation, a tendency to self-isolate,

11

feelings of hopelessness, feelings of worthlessness, feelings of guilt, and suicidal ideation (no intent or plan).  Id.

In her medical source statement, Dr. Stewart opined that Moon had a slight restriction to her abilities to understand, remember, and carry out detailed instructions. (Admin Tr. 412-13).  Dr. Stewart opined that Moon had no restriction to her abilities to understand, remember, and carry out short, simple instructions, make judgments on simple work-related decisions.  Id.  She also opined that Moon's ability to respond appropriately to supervision, co-workers, and work pressers in a work setting was not affected by her impairments.  Id.  The ALJ accorded "little" weight to Dr. Stewart's assessment because he believed it to be "an overestimate of the claimant's functional limitations."  (Admin Tr. 21).

On May 31, 2012, Dr. Bohn assessed Moon's physical RFC as part of the initial review of Moon's claim by the social security administration.  Pursuant to 20 C.F.R. §404.927(e) and SSR 96-6p, the ALJ considered Dr. Bohn's physical RFC assessment as a medical opinion by a nonexamining source.  Based on the evidence of record at that time, Dr. Bohn opined that Moon could: occasionally lift or carry twenty pounds; frequently lift or carry up to ten pounds; stand and walk up to six hours per eight-hour workday; push or pull with upper and lower extremities without limitation; occasionally climb ramps or stairs, balance, stoop (i.e., bend at the waist), kneel,

crouch (i.e., bend at the knees), and crawl.  Dr. Bohn also opined that Moon should avoid concentrated exposure to extreme cold, vibration, and workplace hazards. (Admin Tr. 87-89).  The ALJ accorded "great" weight to Dr. Bohn's assessment, and explained that the doctor's opinion was consistent with the objective medical evidence and clinical findings of record.  (Admin Tr. 21).

On June 1, 2012, Dr. Croyle completed a psychiatric review technique ("PRT") assessment, and assessed Moon's mental RFC as part of the initial review of Moon's claim by the social security administration.  In his PRT assessment, Dr. Croyle opined that Moon's impairments resulted in a moderate restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration.  (Admin Tr. 85).  In his mental RFC assessment, Dr. Croyle opined that Moon could:

> perform simple, routine repetitive work in a stable environment.  The claimant is able to carry out very short and simple instructions.  She is capable of asking simple questions and accepting instruction.  The claimant is able to maintain socially appropriate behavior.  The claimant's impulse control is adequate.  The claimant can function in production oriented jobs requiring little independent decision making. Review of the medical evidence reveals that the claimant retains the abilities to manage the mental demands of many types of jobs not requiring complicated tasks.

(Admin Tr. 90).  Dr. Croyle concluded that Moon was capable of performing simple,

routine work, in a stable environment on a sustained basis despite the limitations resulting from her impairments.  Id.  The record reflects that, on June 1, 2012, Dr. Croyle assessed that there was no imminent risk for lethality established.  (Admin Tr. 419).  The ALJ explained that he accorded "great" weight to Dr. Croyle's opinion because it was consistent with the objective medical evidence.  (Admin Tr. 21).

At step four, the ALJ relied on testimony given by VE Doherty.  VE Doherty testified that Moon's past relevant work as an office manager, sales associate, and bank teller was skilled or semi-skilled work, performed at a sedentary or light exertion level.  (Admin Tr. 74-75).  The ALJ found that, although Moon retained the ability to engage in light work, her additional limitations precluded her from returning to any of her past relevant work.  (Admin Tr. 21).

The ALJ also relied on VE Doherty's testimony to support his conclusions at step five.  VE Doherty testified that, an individual with the same vocational profile and RFC as Moon could engage in work as a counter clerk (DOT#249.366-010), usher (DOT#344.677-010), and furniture rental clerk (DOT #295.357-018). (Admin Tr. 77). VE Doherty also provided statistical information regarding the incidence of these positions in the state economy.  Id.  Accepting this testimony, the ALJ concluded that Moon could engage in other work that exists in significant number in the national economy.   (Admin Tr. 22-23).

14

Thereafter, Moon sought review of that decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). On December 19, 2014, the Appeals Council denied Moon's request for review.

On February 19, 2015, Moon initiated this action appealing the Commissioner's final decision by filing a complaint in the federal district court. (Doc. 1). In her complaint, Moon alleges that the Commissioner's administrative decision is not supported by substantial evidence and contains errors of law, and therefore must be reversed by this Court. Id. As relief, Moon requests that this Court reverse the Commissioner's final decision and enter an order awarding the benefits to which she is entitled, or in the alternative, vacate the Commissioner's final decision and remand this case to the Commissioner for a new administrative hearing. Id. On April 29, 2015, the Commissioner filed an answer, in which she asserts that her final decision denying Moon's claims is supported by substantial evidence and contains no errors of law. (Doc. 10). Together with her answer, the Commissioner filed a certified transcript from the Social Security Administration of the entire record of the administrative proceedings. (Doc. 11). This matter has been fully briefed, and is now ripe for decision. (Docs. 16, 17, 22).

## III.   LEGAL STANDARDS

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. § 405(g)(incorporated by 42 U.S.C. §1383(c)(3)); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200(3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536(M.D.Pa. 2012).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."  Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  "In

determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.   **Initial Burdens of Proof , Persuasion and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A); see also

20 C.F.R. §416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.  20 C.F.R. §416.920(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC.  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work.   42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision

which evidence he has rejected and which he is relying on as the basis for his finding."

Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.    Step Two: Guidelines for the Assessment of the Severity

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairments are (1) medically determinable or non-medically determinable, and (2) severe or non-severe.  See 20 C.F.R. §416.920(a)(4)(ii)("If you do not have a severe medically determinable physical or mental impairment ... we will find that you are not disabled."); SSR 96-4p, 1996 WL 374187 at *1 (S.S.A. 1996)("In the absence of a showing that there is a medically determinable physical or mental impairment, an individual must be found not disabled at step 2 of the sequential evaluation process.").

To be medically determinable, an impairment must "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  SSR 96-4p, 1996 WL 374187 at *1.  "Under no circumstances may the existence of an impairment be established on the basis of symptoms alone."  Id. at 2.  Where an ALJ finds that an impairment is not medically determinable, this impairment is not considered in the later steps of the sequential evaluation.  Therefore, when a finding that an impairment is not medically determinable is not supported by substantial evidence at step two,

such an error undermines the   finding of each subsequent step of the sequential evaluation process.  See e.g., Crayton v. Astrue, No. 4:10-CV-01235, 2011 U.S. Dist. Lexis 139414, 54 (M.D.Pa. Sept. 30, 2011)("The failure of the administrative law judge to find the above noted conditions as medically determinable impairments, or to give adequate explanation for discounting them, makes his decisions at steps two and four of the sequential evaluation process defective.").

Once an impairment is deemed medically determinable, an ALJ must assess whether that impairment is severe.  The Commissioner's regulations provide that "[a]n impairment is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §416.921(a); see also SSR 85-28, 1985 WL 56856 at *3(S.S.A. 1985)("An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at [step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered").

If the claimant has *any* medically determinable impairment that is severe, the evaluation process continues.  Id.  The Third Circuit has observed that "[t]he burden placed on an applicant at step two is not an exacting one."  McCrea v. Commissioner

of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  Moreover, any doubt as to whether a claimant has made a sufficiency showing of severity at step two should be resolved in favor of the applicant.  Id.  Unlike an error in determining whether an impairment is medically determinable, generally a decision is not defective where an ALJ finds that a particular impairment is medically determinable, but subsequently errs by determining that it is non-severe as long some other medical condition was found severe at step two.  See e.g., Shedden v. Astue, No. 4:10-CV-2515, 2012 WL 760632 at *9 (M.D.Pa. Mar. 7, 2012)("A failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two.").  The Social Security regulations contemplate that, in assessing a claimant's  RFC prior to step four, the ALJ considers the symptoms of all medically determinable impairments, whether they are found severe or non-severe at step-two. 20 C.F.R. §416.945(a)(2).

## D.     The Formulation of Proper Hypothetical Questions for Vocational Experts

One of the principal contested issues in this setting relates to the claimant's residual capacity for work in the national economy. There are two ways a claimant can frame a challenge to an ALJ's reliance on vocational testimony at step five. Rutherford v. Barnhart, 339 F.3d 546, 554 n. 8 (3d Cir. 2005).  First, the claimant can

argue that the testimony cannot be relied upon because the ALJ failed to convey

limitations to the VE that were properly identified in the RFC assessment. Id.

Second, the claimant can argue that the VE's testimony cannot be relied upon because

the ALJ failed to recognize credibly established limitations during the RFC

assessment and thus did not convey those limitations to the VE. Id. In either scenario,

as an evidentiary matter, the ALJ's error precludes reliance on the VE's response to

the faulty hypothetical question. Challenges of the latter variety, like those raised in

this case, are best understood as challenges to the RFC assessment itself. Id.

In this regard, the controlling legal standards are clear, and clearly defined. As

the United States Court of Appeals for the Third Circuit has observed:

> Discussing hypothetical questions posed to vocational
> experts, we have said that "[w]hile the ALJ may proffer a
> variety of assumptions to the expert, the vocational expert's
> testimony concerning a claimant's ability to perform
> alternative employment may only be considered for
> purposes of determining disability if the question accurately
> portrays the claimant's individual physical and mental
> impairments." Podedworny, 745 F.2d at 218. A
> hypothetical question posed to a vocational expert "must
> reflect *all* of a claimant's impairments." Chrupcala v.
> Heckler, 829 F.2d 1269, 1276 (3d Cir.1987) (emphasis
> added). Where there exists in the record medically
> undisputed evidence of specific impairments not included
> in a hypothetical question to a vocational expert, the
> expert's response is not considered substantial evidence.
> Podedworny, 745 F.2d at 218 (citing Wallace v. Secretary

23

of Health & Human Servs., 722 F.2d 1150, 1155 (3d Cir.1983)).

Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002).

## IV.   DISCUSSION

### A.   The ALJ's Decision that Moon's Impairment Due to Migraine Headaches was Medically Determinable But Non-Severe is Supported By Substantial Evidence.

In this appeal, Moon launches a threefold attack upon the ALJ's decision, arguing first that the ALJ failed to fully consider the disabling effect of her migraine headaches, both at Step 2 of this analytical process and in fashioning a functional analysis of the work she could perform.   At step two of the sequential evaluation process, the ALJ found that several of Moon's alleged impairments were medically determinable but non-severe.   Specifically, the ALJ found that Moon's impairments of diabetes mellitus, restless leg syndrome, and migraine headaches to be medically determinable but non-severe.   (Admin Tr. 16).   Moon argues that the ALJ's determination with respect to one of these non-severe impairments – migraine headaches – is not supported by substantial evidence. (Doc. 16 p. 8).  In response, the Commissioner asserts that the ALJ reasonably found that Moon's migraine headaches were non-severe.  (Doc. 17 p. 12).

24

We agree with the Commissioner that the ALJ's assessment that Moon's migraines were non-severe is supported by substantial evidence. As noted by the ALJ there is no credible evidence supporting Moon's allegations that she experiences migraine headaches as frequently as alleged, or impact her daily activities to the extent alleged. Moon's testimony that she experiences migraines up to three times per month is not consistent with her reports to treating sources that she experiences migraines one or two times per month and that her migraines are usually relieved with Tramadol, Aleve, and Promethazine. (Admin Tr. 375)("She also gets migraines sporadically – 1-2 times a month – usually relieved with tramadol alleve[sic] and promethazine."); see also SSR 96-7p, 1996 WL 374186 at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). Moreover, as noted by the ALJ there is no evidence that Moon's migraines significantly impaired her ability to perform essential daily tasks – such as caring for her daughter – or her ability to maintain sufficient concentration to spend several hours helping her daughter with school work each day. Last, to the extent that Moon relies on the fact that she went to the emergency room for treatment of a migraine on one occasion in 2012, this evidence was considered by the ALJ. See (Admin Tr. 16)("In January 2012, she presented to the emergency room with a severe migraine after taking medication. However, her condition improved

25

with Demerol and she was discharged in stable condition."). Further, we find that this single piece of contradictory evidence is insufficient to undermine the ALJ's conclusion.

Having found that the ALJ's determination that Moon's migraine headaches were a medically determinable but non-severe impairment is supported by substantial evidence, we now turn our attention to Moon's contention that the ALJ failed to account for the credibly established limitations resulting from this non-severe impairment in his RFC assessment and in the hypothetical question posed to VE Doherty. (Doc. 16 p. 13). As discussed above, the Commissioner's regulations contemplate that the credibly established symptoms and limitations of all medically determinable severe and non-severe impairments will be considered when a claimant's RFC is assessed. 20 C.F.R. §§416.945(a)(2). An ALJ's failure to do so is a basis for remand. Moreover, a vocational expert's response to a hypothetical questions posed by an ALJ does not constitute "substantial" evidence unless the hypothetical question accounts for all of a claimant's credibly established limitations.

Moon asserts that "the ALJ failed to properly consider the impact of Moon's migraine headaches," in his RFC assessment or hypothetical questions. (Doc. 16 p. 13). However, consistent with Moon's testimony about the stimuli that trigger her migraines, the ALJ restricted Moon to the performance of jobs where she would not

be exposed to temperature extremes, humidity, wetness, vibration, noise level about level 3.[2] (Admin Tr. 17-18).  Accordingly, we find that the ALJ adequately accounted for the limitations relating to Moon's alleged migraine headaches that he found to be credibly established by limiting her exposure environmental conditions that trigger her symptoms.

### B. The ALJ's Failure to Specifically Address the Use of a Prescribed Walker in his RFC Assessment Was Not Error, Where There is No Evidence That Moon Actually Used the Walker.

In this case, Moon has also raised two arguments relating to her use of a prescribed walker. First, Moon alleges that the ALJ's RFC assessment was incomplete because substantial evidence supports the conclusion that Moon could not stand or walk without using a walker.  (Doc. 16 p. 10).  Second, she alleges that the ALJ's decision is not supported by substantial evidence at step five because the ALJ relied on  VE Doherty's response to a hypothetical question that did not include the use of a walker for ambulation.(Doc. 16 p. 13).

---

[2]Level 3 noise is defined as "moderate," and does not exceed the level of noise produced in the following environments: "business office where type-writers are used; department store; grocery store; light traffic; fast food restaurant at off-hours." Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, D-2 (U.S. Department of Labor, 1993) *available on WestlawNext at* SCODICOT Appendix D.

Moon argues that the ALJ failed to adequately address her use a hand-held assistive device for the purposes of ambulation.  (Doc. 16 p. 10).  This argument is made in reliance on evidence that reveals that a walker has been prescribed to Moon in February 2013.  (Admin Tr. 506).  However, there is no evidence that Moon used her prescribed walker.  Quite the contrary, it appears that Moon expressly denied using the walker on two occasions.  (Admin Tr. 61)(testifying that "I tried a walker but since it was so heavy, it was difficult for me to use."); (Admin Tr. 176)(stating in a function report that Moon had not even tried to use her prescribed walker).

As an initial matter, the parties do not dispute that, during the hearing, the ALJ posed a hypothetical question to the VE that included limitations that are consistent with the ALJ's RFC assessment.  There is also no dispute that neither the ALJ's hypothetical question, nor his RFC assessment, include any limitation related to the use of Moon's prescribed walker, and that the ALJ's only mention of a walker in his decision is that Moon "was prescribed a cane to due to her gait abnormality..." (Admin Tr. 19).  Therefore, in this case, we are called upon to decide whether substantial evidence supports an ALJ's decision to exclude the use of a walker from his RFC assessment without further explanation where the claimant denied using such a device, even though it was prescribed.

Moon contends that the ALJ's failed to explain his implied adverse finding that Moon's prescribed walker is not medically necessary, and therefore does not limit her RFC, warrants remand. (Doc. 16 pp. 10, 13). In response, the Commissioner asserts that the ALJ's conclusion that Moon can engage in the RFC assessed *without* the use of an assistive device is supported by substantial evidence. (Doc. 17 pp. 14-15). While it would have been preferable for the ALJ to have expressly addressed Moon's failure to use her walker, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)(citations omitted). In this case, despite evidence that Moon was prescribed a walker, Moon denied that she actually used one. In fact, the evidence of record suggests that after trying the walker and finding it difficult to use Moon abandoned it in favor of ambulating without the use of any assistive device. Because there is no evidence of record that Moon actually used a walker, and significant evidence from Moon herself that she did not use this assistive device, we find that the ALJ's omission of the walker from his RFC assessment was not an error which compels remand. There is no reason to believe that remanding this case for the ALJ to explain why he excluded Moon's unused walker from his RFC assessment might reasonably lead to a different result. For the same reasons we also find that the ALJ's

29

omission of any limitation relating to the use of a hand-held assistive device from the hypothetical questions posed VE Doherty is harmless error.

**C.     The ALJ's Assessment that Moon Can Engage In the Standing is Supported By Substantial Evidence**

Last, Moon argues that the ALJ failed to recognize significant medical evidence demonstrating that Moon is unable to stand or walk for prolonged periods of time. (Doc. 16 p. 11). In support of her argument Moon relies on treatment notes dated February 3, 2012, in which it was noted that Moon walked with a slow and cautious gait, exhibited a positive romberg sign,[3] and had diffuse give-way weakness that was worst in her left leg. (Admin Tr. 377-78). However, the same treatment note reflects that Moon's leg weakness was "surprising" given the return of fairly normal deep tendon reflexes in her lower extremities. Id. Furthermore, by way of treatment, the doctor ordered an EMG and encouraged Moon to exercise to strengthen her legs. Id. At Moon's appointment for the EMG, it was also noted that Moon walked slowly with a somewhat widened base. (Admin Tr. 393-94). However, the results of Moon's EMG and nerve conduction study revealed no evidence of generalized peripheral neuropathy, no CIDP, no myopathy, and no recurrent Guillain-Barré syndrome. Id.

---

[3] A patient's romberg sign is positive where his or her body sways when standing with feet close together and eyes closed. Dorland's Illustrated Medical Dictionary, 1715 (32nd ed. 2012). A positive romberg sign is the result of loss of joint position sense. Id.

A rheumatologist has ruled out any inflammatory or rheumatic condition that might be causing Moon's leg pain. (Admin Tr. 374). During an examination that took place one month before the EMG, Moon denied joint pain and swelling, but reported stiffness that improves with activities, and examination revealed no joint deformities, effusion, inflamation, edema, skin discoloration, clubbing or cyanosis. (Admin Tr. 361, 364). On neurologic exam, Moon's gait was normal despite slight bilateral weakness in proximal muscles and slight hyperflexia on the right side. (Admin Tr. 364).

In his decision, the ALJ explained that Moon's subjective testimony about the nature, severity, and limiting effects of her impairments were not entirely credible, and relied both on objective medical evidence and a nonexamining medical source opinions to support his conclusion that Moon could engage in "light" work. As far as the objective medical evidence, the ALJ cited evidence that, despite being prescribed a walker and having difficulty rising from a seated position, Moon walked with a normal gait, exhibited only slight muscle weakness, there was no evidence of any inflammatory or rheumatic condition, an EMG revealed no neurologic condition underlying her worsening gait, and that her back and muscle pain was treated with a combination of Tramadol and Naproxen. (Admin Tr. 19-20). The ALJ also accorded "great" weight to the opinion of non-examining source Dr. Bohn, who opined that

Moon was capable of engaging in a range of light work.  (Admin Tr. 21).

Recognizing that the "substantial evidence" standard of review prescribed by statute is a deferential standard of review, <u>Jones v. Barnhart</u>, 364 F.3d 501, 503 (3d Cir. 2004), which is met by less than a preponderance of the evidence but more than a mere scintilla of proof, <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), we find that the ALJ's decisions assessing this competing proof  regarding the plaintiff's ability to function despite her various claimed impairments was supported by substantial evidence and may not now be disturbed on appeal. Accordingly, we find that the ALJ's determination that Moon could engage in the standing and walking necessary to perform a limited range of light work, despite Moon's difficulty rising from a seated position, cautious gait, and positive romberg sign, is supported by substantial evidence.

## V.    RECOMMENDATION

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED** and that Moon's requests for the award of benefits or remand for a new administrative hearing be **DENIED**.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this 9th day of November, 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge